UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHAWN COLWELL,

        Plaintiff,

v.                                     CAUSE NO. 3:21-CV-690-DRL-JEM

LIEUTENANT BEANE *et al.*,

        Defendants.

OPINION AND ORDER

Shawn Colwell, a prisoner without a lawyer, proceeds on a Fourteenth Amendment claim against Lieutenant Beane and Accountant Maston for charging him restitution without a pre-deprivation hearing on July 9, 2021. ECF 15. The defendants filed a motion for summary judgment, arguing that Mr. Colwell did not exhaust his administrative remedies with respect to his claim. ECF 25.

In a declaration, Mike Gapski, grievance specialist supervisor at the Miami Correctional Facility, attests that a grievance process is available to inmates. ECF 25-1 at 1-2. The grievance policy requires correctional staff to distribute copies and to explain it to inmates upon their admission to the correctional system. ECF 25-2 at 7. The policy is also available to inmates through the law library, counselors, and grievance specialists. ECF 25-1 at 5. The policy sets forth a three-step grievance process. ECF 25-2 at 9-14. First, an inmate must file a formal grievance with the grievance specialist. *Id.* Inmates must submit formal grievances within ten business days of the incident at issue. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may

file an appeal with the warden or his designee. *Id.* Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.*

Also, according to the grievance policy, an inmate may seek an extension of time by submitting the reason for the delay on a separate piece of paper along with the appropriate grievance or grievance appeal form or a request for the appropriate form. *Id.* at 14. Inmates seeking such an extension must show good cause. *Id.* An example of good cause under the grievance policy is an inability to comply for reasons outside of the inmate's control. *Id.* at 10.

According to the grievance records, Mr. Colwell submitted three grievances, each dated August 16, 2021, regarding the deduction from his prison account on July 9, 2021. ECF 25-5. On September 2 and September 10, the grievance officer rejected the grievances as untimely. *Id.* The grievance records also reflect that Mr. Colwell successfully submitted unrelated grievances regarding hygiene products that were dated June 21, 2021, and June 30, 2021. ECF 25-4.

In the summary judgment briefing, Mr. Colwell alleges that he filed a grievance related to the claim on June 9, 2021. ECF 30. According to Mr. Colwell, he gave the grievance, unsigned and undated, to an inmate clerk to make copies, but the inmate clerk placed the grievance into the mailbox unbeknownst to Mr. Colwell. *Id.* In a letter dated June 7, 2021, the law library notified Mr. Colwell that they had placed his grievance in the mailbox. ECF 30-1 at 1. In an undated letter, Mr. Colwell advised the grievance office that he had submitted a grievance relating to the restitution on June 9, 2021. *Id.* at 2. The

2

grievance officer responded that the grievance was returned to him on August 3, 2021, as incomplete. *Id.*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

As an initial matter, Mr. Colwell's narrative regarding his efforts to complete the grievance process conflicts with the allegations of his claim with respect to the timing. According to the complaint, Lieutenant Beane first examined Mr. Colwell's mattress and approached Mr. Colwell about paying for a replacement on June 18, 2021, but Mr. Colwell refused to sign a remittance form. ECF 1. Consistent with these allegations, Mr. Colwell attached a remittance form, dated June 18, 2021, prepared by Lieutenant Beane, indicating that Mr. Colwell refused to sign it. ECF 1-1 at 1. He also attached ledgers from his prison account indicating that the deduction occurred on July 9, 2021. *Id.* at 2. Mr. Colwell offers no explanation or evidence that would allow the court to reasonably infer that he knew that he might be forced to pay for a replacement mattress before his encounter with Lieutenant Beane on June 18, 2021. Consequently, it is unclear how Mr. Colwell could have submitted a relevant grievance on June 9, 2021—nine days before he had any reason to anticipate that an unauthorized deduction might occur.

The court has considered whether Mr. Colwell's identification of June 9, 2021, as the date he first filed a grievance was a typographical error. Though it would be understandable for any litigant to transpose inadvertently the dates of events that occurred eighteen months prior, the record indicates that Mr. Colwell's identification of that date was intentional. First, in the response brief, on three separate occasions, Mr. Colwell identifies the date of the deduction as "June 9, 2021," where the word "July" was struck through with the word "June" written above it. ECF 30 at 1-3. Next, Mr. Colwell attached an exhibit to the response brief to support the June 9, 2021, date—the unsigned letter to the grievance officer. ECF 30-1 at 2. The unsigned letter resembles the response

4

brief in that Mr. Cowell, on two separate occasions, identifies the date he filed the grievance on "6/9/21," where the number "7" is struck through with the number "6" written above it.[1] *Id.*

The supplemental response removes any remaining doubt as to whether Mr. Colwell's intent regarding the June 9 date, reading as follows:

> In the defendant's reply, the defendant incorrectly references July 9, 2019, as the date of the original first filed grievance. The defendant's Exhibit F: Second Declaration of Grievance Specialist Michael Gapski also makes the same mistake referencing to the wrong date of July 9, 2019.
>
> ***The correct date is July 9, 2021. Well, it was actually first filed on June 7, 2021, by the law library clerk without Mr. Colwell's signature on it.*** It was held by Grievance Specialist Michael Gapski for two months before it was finally returned to Mr. Colwell unfiled without any grievance log ID number assigned to it.

ECF 38 at 1 (bold and italics added for emphasis). Here, Mr. Colwell identifies June 7, 2021, as the correct date instead of June 9, 2021, deviating from summary judgment response without any explanation, but June 7, 2021, is even further removed to the events giving rise to Mr. Colwell's claim. The court cannot logically reconcile the purported dates on which Mr. Colwell first attempted to submit a grievance with the allegations of his claim. As a result, the court finds that no reasonable factfinder could find that Mr. Colwell submitted a grievance related to his claim on June 7, 2021, or on June 9, 2021.

---

[1] This exhibit is sufficiently suspicious as to raise concerns that Mr. Colwell has attempted to defraud the court by altering his exhibits to fit his summary judgment argument. The court declines to impose sanctions or issue a show cause order at this time but advises Mr. Colwell that efforts to defraud the court could subject him to sanctions, including monetary fines or filing restrictions.

Having addressed this factual issue, the court considers the ultimate question of whether Mr. Colwell exhausted his available administrative remedies. The record reflects that the Miami Correctional Facility maintained a grievance process. It reflects that Mr. Colwell was able to submit grievances to the grievance office in June 2021 but that he filed no grievances related to his claims during this month. No evidence suggests that the grievance process was unavailable to Mr. Colwell in July 2021, and Mr. Colwell does not contend that he made any effort to pursue a grievance related to his claim during this month. The record also indicates that Mr. Colwell submitted three grievances related to his claim in August 2021, but these were each rejected as untimely.

Additionally, the record contains two returns of grievances in which Mr. Colwell arguably sought to demonstrate good cause to excuse the untimely nature of his grievances. ECF 30-1 at 5-6. In his attempts to demonstrate good cause, he faults the grievance specialist and the law library clerk for frustrating his prior effort to submit a timely grievance. This explanation might be sufficient to excuse the delay if the prior effort occurred during the time when the grievance would have been timely—by July 23, 2021, ten business days after the deduction occurred. But, in his summary judgment arguments, Mr. Colwell specifically and intentionally identifies one and only one effort to submit a grievance related to his claim on or before July 23, 2021—his purported effort on June 7, 2021 or June 9, 2021. Absent some other showing that Mr. Colwell attempted to submit a grievance on or before July 23, 2021, the court cannot find that correctional staff rendered the grievance process unavailable by declining to excuse the untimely nature of his grievances.

In sum, the record demonstrates that the grievance process was available to Mr. Colwell but that Mr. Colwell did not submit a grievance related to his claim against Lieutenant Beane and Accountant Maston. Because Mr. Colwell did not exhaust his available administrative remedies, the motion for summary judgment is granted, and this case is dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that all dismissals under § 1997e(a) should be without prejudice.").

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 25);

(2) DISMISSES this case without prejudice; and

(3) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED.

January 26, 2023                                         *s/ Damon R. Leichty*
                                                          Judge, United States District Court